

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00425-CR

CARL WADE CURRY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 46th District Court
Hardeman County, Texas
Trial Court No. 4157, Honorable Dan Mike Bird, Presiding

March 6, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Through eleven issues, appellant Carl Wade Curry appeals his conviction for theft of property valued at $200,000 or more,[1] and the resulting sentence of ninety-nine years' confinement in prison. We will affirm.

---

[1] *See* TEX. PENAL CODE ANN. § 31.03(a) & (e)(7) (West Supp. 2013).

## Background

Evidence at trial showed in February 2010 appellant contacted Mississippi cattleman David Sanders concerning the purchase of cattle. When he telephoned Sanders, appellant did not use his real name, instead identifying himself to Sanders as "Earnest Jackson." Appellant later explained he did so because he feared Sanders would not do business with him because of "blemishes" on his reputation. Through their telephone conversations, appellant ordered four truckloads of cattle, which Sanders shipped to pens appellant used in Hardeman County. Value of the cattle exceeded $200,000.

The sales invoices required payment for the cattle at the time of delivery. But appellant did not make payment. He shipped the cattle to two Kansas feedlots. He received a check for a percentage of the value of one load of the cattle but payment on the check was stopped after it was discovered Sanders had not been paid. Sanders eventually arranged for the feedlots to complete feeding the cattle for his account.

Appellant was arrested and indicted for the charged offense. Although not a lawyer, appellant chose to represent himself at trial. The court appointed standby counsel. Appellant was convicted and sentence imposed as noted. This appeal followed.

## Analysis

### Legal Representation at Trial and on Appeal

2

Through his first and second issues, appellant maintains his court-appointed standby counsel rendered ineffective assistance at trial, denying him the right of effective assistance of counsel guaranteed by the United States and Texas Constitutions.[2]  In particular, appellant argues standby counsel failed to assist him in stating a proper objection to the admission into evidence of appellant's written statement and failed to assist him in moving for a continuance.

In standby representation, the defendant presents his own case with the advice and counsel of an attorney.  *Smith v. Smith,* 22 S.W.3d 140, 152 (Tex. App.—Houston [14th Dist.] 2000) (citing *United States v. Sacco,* 563 F.2d 552, 554 (2d Cir. 1977) (defendant conducted his own defense with appointed counsel acting as advisor).  For a defendant who chooses to exercise his right to represent himself at trial, there is no constitutional right to standby counsel.  *See Dunn v. State,* 819 S.W.2d 510, 525-26 (Tex. Crim. App. 1991); *Scarbrough v. State,* 777 S.W.2d 83, 93 (Tex. Crim. App. 1989).  *A fortiori* a defendant acting *pro se* has no constitutional right to the effective assistance of standby counsel.  *See, e.g., United States v. Oliver,* 630 F.3d 397, 413-14 (5th Cir. 2011) (explaining that a *pro se* defendant does not have a constitutional right to standby counsel and absent this right the defendant is not entitled to relief for the ineffective assistance of standby counsel); *United States v. Hills,* 425 Fed. Appx. 292, 296-97 (5th Cir. 2011) (per curiam); *United States v. Morrison,* 153 F.3d 34, 55 (2d Cir. 1998); *United States v. Windsor,* 981 F.2d 943, 947 (7th Cir. 1992) (noting "[a]s the

---

[2] Appellant does not demonstrate through argument and authorities that he enjoys greater protection under the state constitution than under the federal constitution. We therefore assume the protections of the federal and state constitutions are identical on the matter.  *Cf. Pena v. State,* 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (holding that defendant must preserve claim that due course of law provides greater protection than Due Process Clause).

word 'standby' implies, standby counsel is merely to be available in case the court determines that the defendant is no longer able to represent himself or in case the defendant chooses to consult an attorney").[3]

Further, even assuming appellant enjoyed a constitutional right to the effective assistance of standby counsel, this record does not establish counsel rendered ineffective assistance. To prevail on this issue, appellant must demonstrate by a preponderance of the evidence that standby counsel's performance fell below an objective standard of reasonableness, and there is a reasonable probability that, but for standby counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Appellant does not direct us to any portion of the record, nor do we find any evidence, demonstrating conduct by standby counsel that rises to the requisite level of ineffectiveness. Further, he does not explain how different actions by standby counsel would have led to a different result. Appellant's first and second issues are overruled.

Through his seventh and eighth issues, appellant asserts the trial court abused its discretion and reversibly erred by appointing him counsel on appeal, denying him the right of self-representation on appeal under the United States and Texas Constitutions.

---

[3] The Second Circuit has noted that an ineffective assistance claim might lie if standby counsel functioned as such in name only and in reality acted as attorney throughout the proceeding. *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997). But appellant does not suggest the record here would support such a notion and we do not find such support from our review of the record.

4

The appeal in this court began with appellant appearing *pro se.* As the deadline for filing his brief approached appellant requested, and was granted, an extension of time to file his brief. The day before his brief was due under the extension, appellant requested another extension. We then abated and remanded the case to the trial court, directing it to determine, *inter alia,* "whether allowing [appellant to represent himself on appeal was] in his best interest, the State's best interest, and is in furtherance of the proper administration of justice." Our abatement order also provided that if the trial court recommended self-representation, we would review the recommendation and issue further orders on reinstatement of the appeal. *Curry v. State,* No. 07-11-00425-CR, 2012 Tex. App. LEXIS 2586, at *4-5 (Tex. App.—Amarillo Mar. 30, 2012) (per curiam order, not designated for publication).

On remand, the trial court conducted a hearing and during the proceeding the judge stated to appellant:

> I had the opportunity to observe you represent yourself [at trial]. . . . And while you did demonstrate some knowledge with respect to be able to represent yourself, you were inadequate in that regard. You did what you wanted to do, but the Court believes that with respect to you representing yourself, it would not be in your best interest, it would not be in the State's best interest and is not in furtherance of the proper administration of justice.

Before concluding the hearing the trial court appointed appellant's present counsel on appeal.

We disagree with appellant's premise that he possesses a constitutional right to represent himself on appeal. *See Bibbs v. State*, No. 07-10-00300-CR, 2011 Tex. App. Lexis 9490, at *3-4 (Tex. App.—Amarillo Dec. 2, 2011) (per curiam order, not designated for publication) (stating the Supreme Court has found no right of self-

5

representation on appeal under the United States Constitution, no Texas court has recognized a state constitutional right to self-representation on direct appeal, and the Texas Code of Criminal Procedure provides no such right).  However, as we explained in *Bibbs*, 2011 Tex. App. LEXIS 9490 at *4, and in the order abating and remanding appellant's case, 2012 Tex. App. LEXIS 2586, at *3, the appellate court may in its discretion authorize a party's self-representation on appeal.  The exercise of this discretion is case-specific and takes into account the best interest of the appellant, the State, and the administration of justice.  Here, the trial court presided over the trial during which appellant presented his own defense, and was well situated to determine appellant's aptitude for self-representation on appeal.  We see no abuse of discretion in its findings regarding self-representation, or in its appointment of counsel for appellant on appeal.  Appellant's seventh and eighth issues are overruled.

By his ninth and tenth issues, appellant asserts that during trial and on appeal he was denied access to "a reasonably sufficient law library and sources," in derogation of a protection afforded by the United States and Texas Constitutions.[4]  Appellant is represented by court-appointed counsel on appeal so we dismiss as moot that portion of the issue pertaining to the case on appeal.  *Cf. Burgett v. State,* No. 02-05-00377-CR, 2006 Tex. App. Lexis 10492, at *17 (Tex. App.—Fort Worth Dec. 7, 2006, pet. refused) (mem. op., not designated for publication) (dismissing as moot question of defendant's denial of access to a law library because at the time of his guilty plea he was represented by court-appointed counsel).

---

[4] Appellant does not explain how the Texas Constitution guarantees him a greater right of access to a law library than the United States Constitution, so we will look only to the federal constitution.

6

The fundamental constitutional right of access to the courts requires prison authorities to assist prisoners with preparing and filing meaningful legal papers by providing adequate law libraries or adequate assistance by persons trained in the law. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), *overruled on other grounds by Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). In the trial court, appellant first was represented by an attorney as counsel of record, and then had the assistance of standby counsel. His entitlement to assistance was thus satisfied by the assistance of a person trained in the law. Under those circumstances, appellant had no additional right of access to a law library. *See Bright v. State,* 585 S.W.2d 739, 744 (Tex. Crim. App. [Panel Op.] 1979) ("In the instant case, an attorney was appointed to represent appellant, and even after appellant's request to represent himself was granted, this attorney was instructed by the trial court to continue as standby counsel. Thus, appellant was provided adequate assistance from persons skilled in the law"). Appellant's tenth issue is overruled.

Sufficiency of the Evidence

*Admission of Appellant's Statement*

Our discussion of appellant's evidentiary issues begins with consideration of his fifth issue, wherein he argues the trial court abused its discretion by admitting his written statement. During the investigation of the case appellant gave a written statement to a special ranger.[5] The document was witnessed by the special ranger. When the State

---

[5] *See* TEX. CODE CRIM. PROC. ANN. art. 2.125 (West Supp. 2013) (a special ranger is an employee of the Texas and Southwestern Cattle Raisers Association and appointed by the director of the Texas Department of Public Safety to aid law

7

offered the document at trial, appellant objected on the ground that the document was not properly signed. As we follow the objection, appellant believes Code of Criminal Procedure article 38.22, section 1 requires a person other than a peace officer must witness the signing of a written statement. The trial court allowed appellant to make his objection both in a hearing outside the presence of the jury and again before the jury when the State offered the statement into evidence. The trial court overruled appellant's objection and admitted the statement into evidence.

We review a trial court's ruling on the admission of evidence using an abuse of discretion standard. *Salazar v. State,* 38 S.W.3d 141, 153 (Tex. Crim. App. 2001). The trial court's evidentiary ruling must be upheld if it is within the "zone of reasonable disagreement." *Id.*; *Montgomery v. State,* 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op. on reh'g). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *In re Thompson,* 330 S.W.3d 411, 417 (Tex. App.—Austin 2007, orig. proceeding). Article 38.22, section 1 provides, "In this article, a written statement of an accused means a statement signed by the accused or a statement made by the accused in his own handwriting or, if the accused is unable to write, a statement bearing his mark, when the mark has been witnessed by a person other than a peace officer." Appellant does not contend he was unable to write and signed the statement with his mark. The statement bears a signature appearing to be

_____

enforcement agencies in the investigation of the theft of livestock or related property. With the exception of traffic citations, a special ranger may make arrests and exercise the authority of a peace officer only when necessary to prevent or abate the commission of an offense involving livestock or related property).

that of appellant.  The requirement of witnessing by one other than a peace officer does not apply here.

The trial court did not abuse its discretion by overruling appellant's objection and admitting his written statement into evidence.  Appellant's fifth issue is overruled.

*Sufficiency Challenges*

In reviewing issues of evidentiary sufficiency, we consider all the evidence, viewing it in the light most favorable to the verdict to determine whether a rational fact finder could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).  We measure the sufficiency of the evidence by the elements of the offense as defined in the hypothetically correct jury charge for the case.  *Cada v. State,* 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

By his third issue appellant contends no evidence supports the jury's implicit finding that David Sanders owned the cattle delivered into appellant's possession.

Under the Penal Code, in a theft prosecution, the name of the owner of the stolen property is not a substantive element of the offense, but under the Code of Criminal Procedure the State must allege the name of the owner in the indictment.  *Garza v. State,* 344 S.W.3d 409, 412 (Tex. Crim. App. 2011); *Byrd v. State,* 336 S.W.3d 242, 251, & 251, n.48 (Tex. Crim. App. 2011) (citing TEX. CODE CRIM. PROC. ANN. art. 21.08).  The State must prove beyond a reasonable doubt that the person alleged in the

9

indictment as the owner is the same person the evidence shows is the owner. *Byrd,* 336 S.W.3d at 252.

The indictment alleged appellant unlawfully appropriated, "by acquiring or otherwise exercising control over, property, to-wit: cattle, of the value of $200,000 or more from David Sanders, the owner thereof, without the effective consent of the owner, namely by deception, and with intent to deprive the owner of the property [.]" In the charge, the court instructed the jury that "'owner" means a person who has title to the property, possession of the property, or a greater right to possession of the property than the person charged." *Cf.* TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (West Supp. 2013) (providing in part an owner has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor).

Appellant related in his written statement that he noticed an advertisement in a trade publication for "D and S Cattle Company-David Sanders" offering pre-conditioned cattle for sale. Sanders testified at trial. He identified "DS Cattle Company" as his company. He described for the jury the telephone calls he received from "Earnest Jackson," and the four truckloads of cattle he shipped to Hardeman County as the result of the calls. Sanders said "Earnest Jackson" told him he "had a place leased," and "had a lot of grass." DS Cattle Company invoices in evidence reflect sale of a total of 421 head to "Rafter J Cattle Company – Earnest Jackson." The invoices in the record are accompanied by a business records affidavit signed by Sanders and showing him as owner of DS Cattle Company. He identified the business records on the stand.

We find the record permitted a rational conclusion beyond a reasonable doubt that the David Sanders alleged in the indictment as the owner is the same person shown by the evidence as the owner. *Byrd*, 336 S.W.3d at 252. Appellant's third issue is overruled.

By his fourth issue, appellant contends no evidence supports the jury's implicit finding that David Sanders "was ever effectively deprived of ownership of the cattle." Later in the argument, appellant urges the evidence was insufficient to prove he "intended to deprive David Sanders of the cattle by deception."

"A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2013); *see Byrd,* 336 S.W.3d at 250 ("[T]he gravamen of theft is in *depriving the true owner of the use, benefit, enjoyment or value of his property,* without his consent" (citation omitted, italics in original)).

> The charge contained the following instructions:
>
> A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property.
>
> Appropriation of property is unlawful if it is without the owner's effective consent.
>
> "Appropriate" means to acquire or otherwise exercise control over property other than real property.
>
> "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception.
>
> "Deception" means creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true; failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or

confirmed by words or conduct, and that the actor does not now believe to be true[.]

A person acts intentionally, or with intent, with respect to the nature of his conduct, or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result.

Appellant's written statement contains the admission that when he called Sanders to ask about buying cattle, "I knew that many people knew that the name Carl Curry had blemishes and that I would not be able to get any cattle bought so I came up with the false name of 'Earnest Jackson.'" Testimony showed appellant used a "track cell phone"[6] bought at Wal-Mart in his dealings with Sanders.

Sanders testified without objection that appellant gave him an address he later learned was fictitious, and that the bank whose name appellant gave him later told him they had no account or record for Earnest Jackson. Sanders told the jury he would not have shipped the cattle had he known appellant was acting under a false name.

According to appellant's statement and trial testimony, he shipped the cattle to two Kansas feedlots, Poky Feeders, Inc. and Kan Sun Feeders, LLC. The cattle were checked into the feedlots in the name of Cattle, Inc., an entity with which appellant apparently had affiliation. There was evidence appellant planned to borrow some seventy percent of the value of the cattle and use the funds to pay Sanders. How

---

[6] Concerning track cell phones, the special ranger testified:
When you are at Wal-Mart or any of these chain stores and you see where they've got the phones that you can buy that have minutes on it, you can buy those prepaid phones with minutes, and you have to give no identification whatsoever, and when we actually subpoena the phone company for their records, there is no names, there is no phone call records, and they are basically an untraceable phone that are often used in the criminal activity that we investigate.

appellant intended to cover the remainder due Sanders was not shown, although when asked on cross-examination he stated, "I had other arrangements to cover the different costs."

The transaction with Poky Feeders proceeded far enough that appellant received a check payable jointly to Cattle, Inc. and a Quanah, Texas, bank where he once maintained an account. The bank would not accept the check for deposit, and endorsed and returned it to appellant. Appellant then deposited the check to an account he opened at a Marshall, Texas bank. But by that time, it was subject to a stop-payment order.

Appellant concluded his written statement with the declaration, "I did not have the money to purchase the cattle from David Sanders at D&S Cattle Company. I ordered and took delivery of these cattle hoping to get money arranged after receiving the cattle to make payment." Sanders testified that he contacted appellant when he did not receive payment for the cattle, and appellant told him another party was going to pay for the cattle, "and he said [that party's] secretary has been out a couple of days with the flu, but he said she'll be back in the morning and we'll get you a check Federal Express." Sanders added, "And I never got the check."

The State also presented evidence of two cattle purchase and sale transactions in 2009 in which appellant obtained cattle through payment by a bogus check.[7] The resulting losses to the sellers or transferors collectively exceeded $100,000.

---

[7] Concerning the unlawful appropriation of property, Penal Code section 31.03(c)(1) states, "Evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible

13

The jury may infer intent from the acts, words, and conduct of the accused. *Dues v. State,* 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982). On this evidence, the jury was authorized to find beyond a reasonable doubt that appellant intended to deprive Sanders of the cattle. In the face of his admittedly deceptive actions and other evidence of his culpable intent, the jury was not required to accept appellant's assertions he intended to pay Sanders. *See Romero v. State,* 406 S.W.3d 695, 697 (Tex. App.—Houston [14th Dist.] 2013, pet. struck) (noting the jury's responsibility to fairly resolve conflicting testimony, weigh the evidence, and draw reasonable inferences). Appellant's fourth issue is overruled.

By his sixth issue, appellant argues the evidence was insufficient to prove he unlawfully appropriated the cattle with intent to deprive the owner of the cattle. As we understand the gist of appellant's complaint here, the evidence was insufficient to identify him as the perpetrator of the offense charged.

Appellant's statement alone provides legally sufficient evidence that he assumed the name Earnest Jackson and through that identity unlawfully appropriated property with intent to deprive the owner of the property. To that we add the special ranger's testimony, adduced on cross-examination by appellant, that a trucker who delivered cattle told the ranger "he witnessed you [appellant] sign Earnest Jackson and picked you out of a photo line-up." Appellant's sixth issue is overruled.

_____

for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty." Tex. Penal Code Ann. § 31.03(c)(1) (West Supp. 2013).

Denial of Appellant's Motion for Continuance

In his eleventh issue, appellant asserts the trial court abused its discretion and committed harmful error when it denied his motion for continuance. Appellant's brief argument under this issue to some extent appears predicated on a conclusion that standby counsel rendered ineffective assistance. We have already determined that was not the case.

According to the discussion of the trial court and parties at the hearing on appellant's motion for continuance, appellant's counsel, who later became standby counsel, was appointed in July 2010. The case was originally set for trial in the fall of 2010 but was continued for an unspecified reason. According to the State, without appellant's disagreement, the prosecutor maintained an "open file policy" in the case "for over a year" and appellant's counsel or standby counsel reviewed the file "on numerous occasions." Appellant filed a request for discovery in January 2011 but did not receive the items sought until some six days before trial commenced several months later. After taking into account the file, the length of time the case was on file, the previous trial settings, and the open file policy of the prosecutor, the trial court denied appellant's motion.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Gallo v. State,* 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). Reversal is obtained only if the appellant demonstrates error by the trial court in denying the motion and that absent the continuance he was harmed. *Gonzales v. State,* 304 S.W.3d 838, 843 (Tex. Crim. App. 2010). Harm is ordinarily shown only at the hearing on a motion

for new trial because only then is the defendant able to produce evidence showing what additional information, evidence, or witnesses would have been available had the motion for continuance been granted. *Id.* at 841-42 (citing George E. Dix & Robert O. Dawson, 42 Texas Practice: Criminal Practice and Procedure § 28.56 (2d ed. 2001), at 532-33).

On this record, we cannot say the trial court abused its discretion in denying appellant's motion for continuance. Moreover, while appellant filed a motion for new trial it was apparently overruled by operation of law. At any rate, we have no record of a hearing on the motion. Thus appellant has not demonstrated how he was harmed by the trial court's ruling. Appellant's eleventh issue is overruled.

Conclusion

Having overruled or dismissed each of appellant's issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

Pirtle, J., concurring in the result.